UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M.T. and A.T., individually and on behalf of R.T.,<br><br>                         Plaintiffs,<br><br>          -against-<br><br>ARLINGTON CENTRAL SCHOOL DISTRICT,<br><br>                         Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br>22-CV-00437 (PMH) |

PHILIP M. HALPERN, United States District Judge:

Plaintiffs M.T. and A.T. (collectively, "Plaintiffs") bring this action, individually and on behalf of their minor son, R.T., against Arlington Central School District ("Defendant" or the "District"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* (Doc. 1, "Compl."). Plaintiffs seek judicial review of a decision by a State Review Officer ("SRO") at the New York State Education Department which found that: (i) although R.T. was denied a free appropriate public education ("FAPE") for part of his third-grade year and for his fourth-grade year (March 14, 2018 to June 30, 2019), Plaintiffs were not entitled to relief for that time period; (ii) R.T. was not denied a FAPE for his fifth-grade year (2019-2020); (iii) Plaintiff's placement of R.T. at The Pinnacle School ("Pinnacle") was not an appropriate private placement; and (iv) the equities weighed against Plaintiffs. Plaintiffs seek reversal of that decision, reimbursement for the tuition and transportation costs of placing R.T. in private school for his fifth-grade year (2019-2020), compensatory education for part of his third-grade year and his fourth-grade year (March 14, 2018 to June 30, 2019), pre-judgment interest, and attorney's fees, costs, and expenses of this proceeding. Before the Court is Plaintiffs' motion for summary judgment. (Doc. 11; Doc. 12, "Pl. Br."; Doc. 16, "56.1"; Doc. 17, "Opp. Br."; Doc. 19, "Reply").

For the reasons set forth below, Plaintiff's motion for summary judgment is GRANTED IN PART and the matter is remanded to the Impartial Hearing Officer "IHO" for additional fact-finding and determination of a remedy consistent with this Memorandum Opinion and Order.

## BACKGROUND

R.T. was a student in the District's school system until his fifth-grade year, at which point Plaintiffs placed him in private school at Pinnacle. There is no dispute that R.T. is eligible under IDEA for special education and related services as a student with Autism and attention deficit hyperactivity disorder ("ADHD"). (Doc. 1-2, "SRO" at 2 n.1; Ex. 36 at 25).[1] R.T. was, accordingly, provided with Individual Education Plans ("IEPs") each year and annual reviews were conducted for him by a Committee on Special Education ("CSE").[2] (*See, e.g.* Ex. 8; Ex. 92). At issue in this appeal is the IEP provided for R.T. for the 2019-2020 school year, *i.e.*, fifth grade. Although earlier IEPs were at issue during prior stages in the parties' dispute, there is now no dispute that R.T. was denied a FAPE for the relevant time period prior to fifth grade, March 14, 2018 to June 30, 2019.[3] (56.1 at 6; *see generally*, Def. Br.). As such, the Court will limit its recitation of the facts to those material to the issues in dispute.

---

[1] The parties' submissions on these motions—including the joint Rule 56.1 Statement—and the SRO's decision each cite to exhibits in the administrative record as they are numbered therein. For ease of reference and the sake of consistency, the Court does the same in lieu of citing to pagination generated by ECF. Exhibits that are numbered (*i.e.* 1, 2, 3) are those submitted by the District, whereas exhibits that are lettered (*i.e* A, B, C) are those submitted by Plaintiffs.

[2] New York assigns responsibility for fulfilling the state's obligations under IDEA to local CSEs. N.Y. Educ. Law § 4402(1)(b)(1)(a); *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 833 (2d Cir. 2014).

[3] March 14, 2018 is the date that R.T.'s February 26, 2018 IEP was implemented and, in accordance with IDEA's statute of limitations, was the start date for Plaintiff's SRO challenge to the education provided by the District. (SRO at 8 n.7). June 30, 2019 is the end date for the IEP in place immediately prior to the August 30, 2019 IEP.

I. R.T.'s Disability Classification

R.T.'s IEP for the 2015-2016 school year, listed his disability classification as Other Health Impairment, although the plan acknowledges that R.T. was diagnosed with Autism on page 5. (Ex. 7). R.T.'s next IEP, and each after that, listed his disability classification as Autism. (*See, e.g.* Ex. 8).

II. The August 13, 2019 IEP

The District published R.T.'s IEP for his fifth-grade year on August 13, 2019. (Ex. 17). The IEP was developed based on two CSE meetings (August 1, 2019 and August 13, 2019) attended by both Plaintiffs, the District's Director of Special Education, special and general education teachers, the CSE Chair, two Behavior Intervention Specialists, and the Board of Cooperative Educational Services ("BOCES") Administrator. (*Id.* at 1). The CSE considered: (i) R.T.'s evaluations and reports including his behavioral intervention plan, functional behavioral assessment, speech/language evaluation, physical therapy evaluation, neuropsychological evaluation, speech/language progress summary, speech/language progress report, neurologist letter, occupational therapy annual review summary, physical therapy progress summary, and teacher progress summary; (ii) his test results on the Beery-Visual Motor Integration, Comprehensive Assessment of Spoken Language (CASL), Delis-Kaplan Executive Function System, Kaufman Test of Educational Achievement 3rd Edition, NEPSY II, Test of Problem Solving-3 Elementary, Test of Visual Perceptual Skills (Non-Motor), Wechsler Intelligence Scale for Children – Fifth Edition (WISC-V), Oral and Written Language Scales-II (OWLS-II), Bruininks-Oseretsky Test of Motor Proficiency-BOT2, an additional WISC-V, and additional BOT2, CELF-5, Wechsler Individual Achievement Test-III, and additional CASL, Pragmatic Language Skills Inventory, and Test of Pragmatic Language-2nd Edition; (iii) his academic achievement across five skills categories; (iv) his social development; (v) his physical

development; (vi) his management needs; and (vii) his needs in the general curriculum. (*Id.* at 6-11).

The CSE, based on this information, developed 18 "measurable annual goals" for R.T. across the following categories: study skills, reading, writing, mathematics, speech/language, social/emotional/behavioral, and motor skills. (*Id.* at 11-12). Each goal was assigned specific criteria to measure by, methods of observation, and schedules of review. (*Id.*) The CSE then developed a detailed IEP for R.T. that included, *inter alia*, non-integrated special classes, six weekly sessions of different forms of therapy, fifteen different learning strategies to implement, social work consultations, behavior specialist consultations, occupational therapy consultations, testing accommodations, and transportation accommodations. (*Id.* at 12-16).

The CSE's ultimate recommendation, in sum, was to meet R.T.'s educational needs and current goals by enrolling him in the Ulster BOCES Autism Program for Independent Education ("APIE"). (*Id.* at 1-2). Although R.T. was accepted into an in-District BOCES program with the Putnam Northern Westchester School District, the CSE determined that his needs would not be supported in that program because R.T. would have been integrated into the larger group for certain classes and lunch/recess. (*Id.* at 2). The Ulster County BOCES APIE program, on the other hand, is housed in its own building and APIE students do not interact with those in other programs. (*Id.* at 2). The CSE described that:

> The APIE program provides individualized supports and instruction from highly qualified staff including behavior support specialists. Academics and prosocial skill development are delivered in a multidisciplinary framework. The program provides a high ratio of adult support to meet students' needs. [4]

---

[4] The record here was filed under seal, as is common in IDEA cases. As such, and in an abundance of caution, the Court will quote herein only to information that is substantively disclosed in the parties' briefing and thus, already made public. Moreover, both the IHO and SRO decisions quote from the same administrative record and were publicly filed with the Complaint. (*See* Doc. 1-1, "IHO"; *see also* SRO). The need for the Court to conduct its review and cite directly to the record outweighs the potential privacy

Plaintiffs informed the District of their intent to enroll R.T. at Pinnacle the same day as the issuance of the IEP, August 13, 2019. (Ex. 82). The District responded on August 21, 2019, indicating that it believed the IEP offered R.T. a FAPE for the upcoming school year. (Ex. 84). Plaintiffs signed an enrollment contract with Pinnacle on August 28, 2019. (Ex. B.).

III. Challenges to the August 13, 2019 IEP

Plaintiffs challenged R.T.'s 2019-2020 IEP, both before their decision to privately place R.T. and later in front of the IHO and SRO. Ultimately, as discussed *infra*, the IHO and SRO each found the IEP to be sufficient to support R.T.'s needs and that R.T. was provided with a FAPE for the 2019-2020 year.

i. Plaintiff's Initial Objections

Plaintiffs investigated the APIE program prior to the CSE hearing at which the District developed R.T.'s 2019-2020 IEP. Specifically, Plaintiffs had an intake meeting for APIE on April 24, 2019, a follow-up call on June 13, 2019, and a school visit on June 14, 2019. (Ex. LL at 1). Plaintiffs took notes during the school visit, which are compiled in Exhibit LL.[5] Therein, Plaintiffs commented, *inter alia*, that the program "appears similar to current placement" and that they were "not conceived [sic] this will help him [sic] executive functioning deficits." (*Id.* at 2). Plaintiffs wrote to the District's Director of Special Education on July 17, 2019,[6] raising their concerns with both the Putnam/Northern Westchester Program and with the Ulster BOCES APIE program. (Ex. TT). Plaintiffs urged that: (i) APIE was a new program; (ii) there was no Board Certified Behavior

---

interest in refraining from doing so, especially in light of Plaintiffs' and R.T.'s pseudonymity in this matter. *See e.g. and generally*, *W.G. v. New York City Dep't of Educ.*, 801 F. Supp. 2d 142 (S.D.N.Y. 2011).

[5] Defendant avers that Plaintiffs did not share these notes prior to the IHO hearing. (56.1 at 31).

[6] The letter is dated July 17, 2018 but this appears to be a typo given the timeline of events and the context of the letter.

Analyst ("BCBA") on staff; (iii) there could be a safety concern given R.T.'s tendency to not understand social cues; and (iv) because APIE is the same type of program as other BOCES schools in-District—which were not suitable for R.T.—it too would be inappropriate. (*Id.* at 2). Plaintiffs also urged that APIE would not meet R.T.'s executive functioning needs. (*Id.*). The same letter also requested that Plaintiffs be allowed to express their input about the APIE program at a CSE meeting. (*Id.*). That request was granted and, at the August 13, 2019 CSE meeting, Plaintiffs expressed similar concerns as those stated in their letter. (Ex. 17 at 1-2). The CSE considered, and the Assistant Principal of APIE addressed, each, noting, for example, that "[R.T.'s] instruction w[ould] be individualized to provide the [executive functioning] support he needs" and that "[R.T] would be safe in the APIE program." (*Id.*).

ii.   Testimony at the IHO Hearings

After Plaintiffs filed a due process complaint challenging the August 20, 2019 IEP on February 25, 2020, the IHO held 14 days of proceedings between May 18, 2020 and March 22, 2021. (SRO at 8-9). Relevant to the propriety of the APIE program and the August 20, 2019 IEP were, primarily, the following four witnesses: (i) Gwen Kramer-Gold ("Kramer-Gold"), Principal of Ulster BOCES; (ii) Holly Schwartz ("Schwartz"), R.T.'s former school psychologist; (iii) Dr. Stephanie O'Leary ("O'Leary"), an independent clinical psychologist who interviewed R.T. in October 2018 and prepared a neuropsychological evaluation (Ex. 36); and (iv) Dr. Carol Fiorile ("Fiorile"), an independent BCBA who evaluated R.T. and prepared a Functional Behavior Assessment and Behavior Intervention Plan ("FBA-BIA") for him, dated November 14, 2018 (Doc. 39).

A.   Kramer-Gold Testimony

Kramer-Gold testified generally about the APIE program and specifically as to how it would align with R.T.'s needs. Kramer-Gold submitted that the APIE program assisted with

6

"communication skills, relationship building skills, executive functioning skills . . . [and] strategies to learn how to function in a classroom and be able to globalize some of those skills," (Tr. 416:20-417:02) and that the program offered "all of the mandated services that a student might have on their IEP . . . including occupational therapy, physical therapy, speech and language pathology, counseling . . . social work[]," (*Id.* at 417:08-13), and two part-time BCBAs that the school contracts with (*Id.* at 419-20). With respect to R.T., Kramer-Gold testified that she met with Plaintiffs and toured the school with them, that R.T. would have been placed in the new third through fifth-grade APIE elementary classroom, and that "our assessment of [R.T.] . . . [is that] he would be perfect, he would be an average student. He would fit right in." (*Id.* at 437:03-07). Kramer-Gold also testified that Plaintiffs expressed to her that "they wanted [R.T.] to be in a school that understands autism . . . [and that] staff would be . . . really empathetic and compassionate to their son". (*Id.* at 443:21-444:03). Kramer-Gold testified that "the staff who would be bridging into the program absolutely met that criteria." (*Id.* at 444:09-11).

### B.  Schwartz Testimony

Schwartz testified with respect to the APIE program, on cross examination by Plaintiffs' counsel, that R.T.'s executive functioning needs would be supported by APIE because executive functioning goals would be included in the IEP and therefore integrated into his education. (*Id.* at 605). Specifically, Schwartz testified that APIE would "provide [R.T] with ongoing, integrated . . . [daily] supports for a child that has executive functioning skill deficits." (*Id.* at 606:06-10). Schwartz also testified on cross that a "[s]maller supportive setting with continued academic rigor, addressing the social-emotional and physical needs [of R.T.]" would set R.T.'s IEP for fifth grade apart from the plans implemented earlier in his academic career. (*Id.* at 610:03-05).

C. <u>O'Leary Testimony</u>

O'Leary testified as to her evaluation of R.T. and explained her recommendations for R.T.'s education. Specifically, she explained that "[h]aving an IEP with an Autism Spectrum Disorder classic [sic] is necessary to ensure documentation of programming." (Tr. 941:18-21). Next, she explained that "[o]ne of the most critical interventions that's required is that [R.T.] be educated in a setting geared towards students with executive functioning. (Tr. 941:22-25). Finally, O'Leary testified extensively as to classroom composition and stated that "[o]ne of the most important parts of this profile is being educated amongst peers with similar profiles." (Tr. 942:14-16).

D. <u>Fiorile Testimony</u>

Fiorile testified about her observations of R.T., her recommendations for R.T., and the APIE program. Specifically, she "recommended that a BCBA be provided for five hours a week and consideration given for a 1:1 support person to be a Registered Behavior Technician." (Tr. 1269:11-14). Because this recommendation and others were not implemented into the August 2019 IEP, Fiorile stated that "I would not expect there would have been a high level of improvement in progress in [R.T.'s] behavior." (Tr. 1269:24-1270:03). Finally, Fiorile stated that R.T. "needs to be in a program that will address . . . both his exceptionally high cognitive levels . . . and also . . . placed with students with similar capabilities." (Tr. 1272:18-25).

IV. <u>Administrative Proceedings</u>

After conducting hearings and weighing the evidence, the IHO issued its decision on July 5, 2021. (*See generally* IHO). The IHO determined that claims relating to "the inadequacy of IEPs developed before February 25, 2018" were barred by IDEA's two-year statute of limitations and focused its analysis on the remainder of the 2017-2018 school year, the entirety of the 2018-2019 school year, and the 2019-2020 school year. (*Id*. at 20). With respect to the remainder of 2017-

2018 and all of 2018-2019, the IHO determined that the District's IEPs during that time were appropriate for R.T.'s needs. (*See, e.g. id.* at 23 ("The IEPs relevant for the 2017-2018 and 2018-2019 academic years identified the deficits in the areas of executive functioning and attentional needs and developed goals to address such needs and recommended a program consistent with those needs and the information available at the time.")). The IHO also found the 2019-2020 proposed placement in the Ulster BOCES APIE program to be have provided R.T. a FAPE and noted specifically with respect to Plaintiffs' challenge of the classroom composition that "[g]iven the size of the class and the number of teaching support staff and the resulting ability to differentiate instruction, I find the grouping to be appropriate." (*Id.* at 24-25).

Plaintiffs appealed the IHO's decision to the SRO, arguing that the IHO erred by failing to find a denial of a FAPE for the period of March 14, 2018 – June 30, 2020. (SRO at 10). With respect to the denial of a FAPE from March 2018 – June 2019, Plaintiffs sought compensatory education, as discussed *infra*. For that time period, the SRO reversed the IHO and found that "the [D]istrict's failure to conduct an FBA/BIP . . . [and] the CSE's recommendation to continue [R.T.] in an ICT classroom" constituted denials of a FAPE. (*Id.* at 28). Despite this finding, the SRO denied Plaintiffs any relief because the "requested relief [wa]s unwarranted" and "the parents' conduct would preclude an award." (*Id.* at 36-37). With respect to the 2019-2020 school year, Plaintiffs sought tuition reimbursement from Pinnacle. For this time period, however, the SRO agreed with the IHO that the August 2019 IEP "was appropriate to meet [R.T.'s] needs" and that he was not, therefore, denied a FAPE. (*Id.* at 36).

## STANDARD OF REVIEW

"Summary judgment in the IDEA context . . . is only a pragmatic procedural mechanism for reviewing administrative decisions." *W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 927 F.3d 126 (2d Cir. 2019) (internal quotation omitted) "Federal courts reviewing administrative decisions

[under IDEA] must give 'due weight' to the administrative proceedings, 'mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)).

Courts reviewing a state agency's decision must base their decision on a preponderance of the evidence and may not substitute their own views on educational policy for those of the school authorities. *W.A.*, 927 F.3d at 144. Review of the state's educational decisions is therefore limited, demanding a level of scrutiny that is more critical than clear error but not nearly as complete as *de novo*. *See C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014). The Court's *de novo* review therefore "only seeks to independently verify that the administrative record supports the district court's determination" regarding the sufficiency of the state's educational decisions. *Mr. P v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 748 (2d Cir. 2018).

Deference to the administrative decision is particularly appropriate when the administrative officer's review has been thorough and careful, and where—as here—the court's decision is based solely on the administrative record. *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 241 (2d Cir. 2012). While district courts "do not simply rubber stamp administrative decisions," *Walczak*, 142 F.3d at 129, review of the administrative decision "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982). "However, the district court is not required to defer to administrative determinations regarding matters of law." *K.H. v. New York City Dep't of Educ.*, No. 12-CV-01680, 2014 WL 3866430, at *15 (E.D.N.Y. Aug. 6, 2014).

The Court must therefore determine first whether the SRO reached "reasoned conclusions" before affording deference to its decision. *See M.H.*, 685 F.3d at 246 ("Reviewing courts must

look to the factors that normally determine whether any particular judgment is persuasive [and must ultimately] defer to the SRO's decision on matters requiring educational expertise unless [the court] concludes that the decision was inadequately reasoned."). "But the district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role . . . . [T]he purpose of the IDEA is to provide funding to states so that they can provide a decent education for disabled students consistent with their traditional role in educating their residents." *Id.* at 244.

At the administrative level, the burden of proof and persuasion falls on the school district to demonstrate that the student was not denied a FAPE. N.Y. Educ. Law § 4404(1)(c). On appeal to a federal court, however, the burden of demonstrating that an SRO ruled incorrectly falls on the party challenging that decision. *M.H.*, 685 F.3d at 225 n.3.

## ANALYSIS

Plaintiffs press four arguments in support of their motion for summary judgment: (i) it was error for the SRO to award no relief for the March 14, 2018 to June 30, 2019 denial of a FAPE; (ii) Defendant's IEP for 2019-2020 denied R.T. a FAPE; (iii) Pinnacle was an appropriate private placement; and (iv) the equities do not bar tuition reimbursement. The Court first addresses IDEA's statutory framework as context for Plaintiffs' arguments and then will address each *seriatim*.[7]

### I.   Statutory Framework

IDEA was enacted "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed

---

[7] Based on the Court's conclusion as to Plaintiffs' second argument, and as discussed *infra*, it need not and does not consider Plaintiffs' third argument that Pinnacle was an appropriate private placement, or the fourth argument that the equities do not bar tuition reimbursement. The Court will, however, consider the equities to the extent relevant to Plaintiffs' first argument and the appropriateness of a compensatory education award.

to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). States receiving public funds are required to provide a FAPE to children with disabilities. 20 U.S.C. § 1412(a)(1)(A). Public school districts must provide "special education and related services tailored to meet the unique needs of a particular child, [which are] reasonably calculated to enable the child to receive educational benefits." *Walczak*, 142 F.3d at 122 (internal quotation removed). The relevant state or local educational agency must conduct an individualized evaluation to determine whether a child has a disability and must develop an annual written individualized education program ("IEP") for each child with a disability. 20 U.S.C. § 1414(d). The evaluation process can be initiated by the agency or the child's parent, cannot be commenced without parental consent, and is subject to statutory temporal and procedural requirements. 20 U.S.C. § 1414(a)(1). In New York, IEPs are developed by local CSEs in conjunction with the disabled student's parents. N.Y. Educ. Law § 4402(1)(b)(1).

IDEA requires that parents be provided with an opportunity to present a complaint regarding the identification, evaluation, or placement of their child through the IEP process. 20 U.S.C. § 1415(b)(6)(A). Parents who are dissatisfied with a school district's disability status determination, or IEP, may unilaterally place their child in a private school, at their own risk, and then seek a retroactive tuition reimbursement from the local school district. 20 U.S.C. § 1412(a)(10)(C). Procedurally, the parent must provide notice ten business days before removing their child from public school. 20 U.S.C. § 1412(a)(10)(C)(iii); *Bd. of Educ. of Yorktown v. C.S.*, 357 F. Supp. 3d 311, 316 (S.D.N.Y. 2016). The purpose of that notice is to provide the school district with "an opportunity to develop a FAPE within the District's own schools - thus saving the cost of reimbursement." *W.M. v. Lakeland Cent. Sch. Dist.*, 783 F. Supp. 2d 497, 506 (S.D.N.Y. 2011).

12

If parents in New York disagree with any part of the IEP process, they may request an impartial due process hearing administered by an IHO appointed by the local education board. *See* 20 U.S.C. § 1415(f); N.Y. Educ. Law § 4404(1)(a). The IHO's decision may be appealed to an SRO. *See* N.Y. Educ. Law § 4404(2); *see also* 20 U.S.C. § 1415(g). The SRO's decision may thereafter be challenged in state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A).

## II.   Remedy for the Denial of a FAPE from March 2018 – June 2019

There is no dispute that R.T. was denied a FAPE for the period from March 2018 through June 2019; indeed, neither party has challenged that aspect of the SRO's determination.[8] (56.1 at 6; *see generally*, Def. Br.). Plaintiffs do take issue, however, with the SRO's decision to deny any relief for that deprivation. (*See* SRO at 36-37).

The SRO determined that Plaintiffs were not entitled to relief for the March 2018 – June 2019 denial of a FAPE for two reasons: (i) that the award of prospective placement at Pinnacle for "an additional year," which Plaintiffs requested, was speculative; and (ii) Plaintiffs' conduct—specifically their refusal to consent to District evaluations—weighed against granting relief. (*Id.*).

"In enacting the IDEA, Congress did not intend to create a right without a remedy." *Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411, 415 (2d Cir. 2010) (internal citation removed). "The IDEA allows an IHO or SRO to fashion an appropriate remedy for students not provided a FAPE, and the Second Circuit has held that compensatory education is an

---

[8] The IHO initially determined that the District provided R.T. with a FAPE from March 14, 2018 to June 30, 2019. (*See* IHO at 21-23). The SRO, however, disagreed with the IHO and found that "the [D]istrict's failure to conduct an FBA/BIP" and "the CSE's recommendation to continue the student in an ICT classroom for the remainder of the 2017-18 school year, when the student's teachers had already concluded that he was clearly failing to progress" constituted denials of a FAPE for R.T. for that time period. (SRO at 28). When the SRO and IHO decisions conflict, the IHO's decision may be afforded diminished weight. *W.A.*, 927 F.3d at 126. Reviewing courts "defer to the final decision of the state authorities, that is, the SRO's decision." *M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725 F.3d 131, 139 (2d Cir. 2013) (internal quotation marks omitted). There is no dispute as to the SRO's determination that R.T. was denied a FAPE for that time period but, in any event, the Court would defer to the SRO's determination under these circumstances.

available remedy under the IDEA to make up for denial of a FAPE." *M.M. v. New York City Dep't of Educ.*, No. 15-CV-05846, 2017 WL 1194685, at *2 (S.D.N.Y. Mar. 30, 2017). Such compensatory education "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 457 (2d Cir. 2015) (quoting *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005)). In some situations, where the record reflects that "the alleged deficiencies suffered by the student have already been mitigated (or even totally alleviated)," an award of compensatory education may not be required. *See Doe by & through Doe v. E. Lyme Bd. of Educ.*, No. 11-CV-00291, 2020 WL 7078727, at *12 (D. Conn. Dec. 3, 2020).[9]

However, it is not clear that this is such a situation. Absent factual findings that there is no plausible way to remediate the nearly year and a half denial of FAPE to R.T., "this Court is not prepared to prematurely shut the door on [Plaintiffs'] claim for relief." *Phillips ex rel. T.P. v. D.C.*, 736 F. Supp. 2d 240 (D.D.C. 2010).

The SRO's first basis for declining to award Plaintiffs relief is that "the parents' requested relief . . . is so speculative that they have failed to even specify the school year for which they seek prospective payment." (SRO at 36). The relief Plaintiffs requested from the SRO included, *inter alia*, "compensatory education for the time period March 14, 2018 to June 30, 2019 . . . consisting of prospective payment of tuition and transportation costs for an additional year at . . . Pinnacle." (SRO Brief at 10). Generally, SRO determinations with respect to proscribing compensatory

---

[9] The Court disagrees with Defendant's comment in a footnote averring that "[a]n award of compensatory education is appropriate only for gross violations of the IDEA." (Opp. Br. at 20 n.7 (quoting *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008)). That proposition is only true if compensatory education is being considered for a student over the age of 21 who is no longer statutorily eligible under IDEA. *Doe*, 790 F.3d at 456 n.15. Plaintiff therefore need not establish a gross violation because R.T. is under the age of 21 and remains statutorily eligible under IDEA.

education plans are entitled to significant deference because such determinations involve matters of educational policy. *See, e.g. M.M.*, 2017 WL 1194685, at *9 ("The SRO is in a much better position than the Court to determine the appropriate amount of [compensatory education] required to put [a student] in the position [they] would be in had [they] not been denied a FAPE."). As such, the SRO's determination that an additional year at Pinnacle is inappropriate to compensate R.T. for the District's prior denial of a FAPE is affirmed.

However, the SRO's inquiry should not have ended there. Plaintiffs also requested, in their pleading to the SRO, any "other, further, or different compensatory education as deemed appropriate." (SRO Brief at 10).[10] The SRO should have considered whether any such compensatory education could be "reasonably calculated" to compensate R.T. *Doe*, 790 F.3d at 457 "The fact that defendant conceded that there was a violation of the IDEA and a subsequent denial of a [FAPE] satisfies the plaintiff's burden of proving entitlement to a properly crafted compensatory award." *Phillips*, 736 F. Supp. 2d at 247. Although "the plaintiff has the burden of *proposing* a well-articulated plan that reflects the student's current education abilities and needs and is supported by the record, . . . a plaintiff [need not] have a perfect case to be entitled to a compensatory education award; on the contrary, once a plaintiff has established [entitlement] to an award, simply refusing to grant one clashes with *Reid*."[11] *Id.* (emphasis added and internal quotations removed). Moreover, "a[n IHO] may provide the parties additional time to supplement the record if [they] believe[] there is insufficient evidence to support a specific award . . . but

---

[10] This, of course, contradicts the SRO's statement that "[i]n their appeal, the parents have not requested any compensatory educational services." (SRO at 36).

[11] Although *Reid*, decided by the D.C. Circuit, is not binding precedent on this Court, its logic with respect to crafting compensatory education remedies is widely accepted and is cited to favorably by the Second Circuit. *See, e.g. Toth v. City of New York Dep't of Educ.*, 720 F. App'x 48, 52 (2d Cir. 2018).

simply choosing instead to award plaintiff nothing does not represent the qualitative focus on the child's individual needs." *Id.* (internal quotations removed).

Nor does the Court agree with the SRO's second purported basis for denying relief, that Plaintiffs' conduct precluded it. The Court declines to afford deference to the SRO's single-paragraph analysis of Plaintiffs' conduct. Only "a thorough and careful equities analysis" would be entitled to deference. *Donohue v. New York City Dep't of Educ.*, No. 20-CV-01942, 2021 WL 4481344, at *11 (S.D.N.Y. Sept. 30, 2021). Such conduct should not preclude relief absent evidence that Plaintiffs were "uncooperative, obstructive, or otherwise unreasonable." *Bettinger v. N.Y. City Bd. of Educ.*, No. 06-CV-06889, 2007 WL 4208560 at *8 (S.D.N.Y. Nov. 20, 2007). It appears to the Court that Plaintiffs decisions were made with R.T.'s best interests in mind and that any delay in conducting evaluations resulted primarily from the District's own conduct.

To the extent the SRO's decision to deny relief was based upon its assertion that R.T.'s "lack of progress was never due to any academic needs or cognitive delays and solely the result of interfering behaviors" (SRO at 36), that alone does not render impracticable an award of compensatory education. Whether compensatory education for R.T. would address academic needs, interfering behaviors, or any other needs is not relevant to its plausibility, as there are a wide range of services that can be implemented as compensatory education. For example, in *Doe*, on remand from the Second Circuit with direction to structure a compensatory education award, the district court approved measures including "speech-language therapy; Orton-Gillingham reading instruction; oral and/or written language instruction; instruction in study skills, social skills, social behavior, and/or executive functioning skills; OT; PT; and transition-related skills; and services to address anxiety" as well as "disability-related courses and/or support services," "assistive technology, including speech technology software such as Dragon Naturally Speaking, or applications geared towards organization," and "evaluations by professionals." 2020 WL

7078727, at *20. The paucity of the record before this Court on the issue precludes crafting such a remedy at this stage. The IHO, however, after supplementation of the record, will be in a better position to structure a plan appropriate for R.T. including similar kinds of services or others.[12] Therefore, remanding to the IHO is appropriate because "the Court concludes that the [IHO] should provide [Plaintiffs] with an additional opportunity to supplement the record with evidence necessary to support a compensatory award" that is "reasonably calculated and individually tailored" to R.T.'s needs and "demonstrates a causal relationship between [R.T.'s] current educational deficits and his earlier denial of [a FAPE]." *Phillips*, 736 F. Supp. 2d. at 249-50.

The SRO's determination that no remedy is warranted for the denial of a FAPE to R.T. from March 2018 to June 2019 is, accordingly, reversed and remanded to the IHO to supplement the record and determine an appropriate compensatory award, if applicable.

### III. Whether R.T. Was Denied a FAPE for 2019-2020

The majority of the SRO's opinion was dedicated to its analysis of the District's IEP for the 2019-2020 school year and whether the APIE program was sufficient to meet R.T.'s needs. (*See generally* SRO). On this issue, the SRO's opinion is "well-reasoned" and "based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16-CV-03138, 2019 WL 6907533, at *7 (S.D.N.Y. Dec. 19, 2019) (internal citation removed). "[T]he Second Circuit has instructed courts that deference to an SRO's decision is more appropriate when [as here] the substantive adequacy of an IEP, as opposed to the procedural adequacy, is at issue; when [as here] the decision involves a dispute over an appropriate educational methodology versus determinations regarding objective

---

[12] To the extent any of these compensatory services would overlap with those required under the District's ongoing IDEA obligations, "[i]n other cases where the child remained eligible under IDEA for the time during which the compensatory award was granted, courts appear to have considered compensatory services to be in addition to, rather than in lieu of, those services covered by the IEP." *Doe*, 2020 WL 7078727, at *18.

indications of progress; and when [as here] the district court's decision is based solely on the administrative record that was before the SRO." *Id.* As such, the Court finds that the SRO's opinion on this issue is thorough and careful and, therefore, entitled to substantial deference.

Plaintiffs challenge the SRO's determination as to the 2019-2020 school year for three reasons: (i) the needs of the other students in the APIE program were discrepant from those of R.T. and the SRO misapplied state regulations regarding classroom composition; (ii) the August 2019 IEP was not based on peer-reviewed research; and (iii) the APIE program could not meet R.T.'s behavioral and executive functioning needs. (Pl. Br. at 15-21).

### a. Classroom Composition

Plaintiff's first argument relies on their analysis of Exhibit MM, a single-page class profile that lists five potential students for the 2019-2020 APIE class, identifying only their grades, reading and math scores, IQs, ages, and disability classifications. (Ex. MM). Plaintiffs contend, based on the alleged discrepancies between R.T. and the other students' profiles, that the APIE program violated New York State education regulations. (Pl. Br. at 15 ("State regulation plainly says 'students with disabilities placed together for purposes of special education shall be grouped by similarity of individual needs' and 'the range of academic or education achievement shall be limited to assure that instruction provides each student appropriate opportunities to achieve his or her annual goals.'" (quoting N.Y. Comp. Codes R. & Regs. Tit. 8 § 200.6(a)(3) (emphases and alterations removed))). The SRO held, with respect to this issue, that "concerns about the likelihood that the student would be appropriately grouped with other students are speculative given that the student never attended the assigned public school site" and that "there is no basis in the hearing record to find that the range of skills among the students included in the May 20, 2019 class profile violated State regulations." (SRO at 33; 35-36).

Indeed, "grouping evidence is not the kind of non-speculative retrospective evidence that is permissible under [Second Circuit precedent]. The school possessed the capacity to provide an appropriate grouping for the student, and plaintiffs' challenge is best understood as 'speculation that the school district would not have adequately adhered to the IEP.'" *G.S. v. New York City Dep't of Educ.*, No. 15-CV-05187, 2016 WL 5107039, at *15 (S.D.N.Y. Sept. 19, 2016) (quoting *J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016)). As in *G.S.*, such is the case even considering "state requirements regarding functional grouping." *Id.* New York's requirement that "the range of academic or education achievement shall be limited to assure that instruction provides each student appropriate opportunities to achieve his or her annual goals" is not necessarily undermined by the range of values presented for the proposed class by Exhibit MM. The regulation does not mandate a specific range for IQ or academic level within a classroom, the appropriateness of which would necessarily vary by situation. Moreover, the imperative of the regulation is to "provide[] each student [with] appropriate opportunities to achieve his or her annual goals." *See also K.F. v. New York City Dep't of Educ.*, No. 15-CV-01126, 2016 WL 3981370, at *12 (S.D.N.Y. Mar. 31, 2016) ("[that] students [in the same grouping are] operating at a different functional level or exhibiting behavioral issues . . . does [not] establish that such a grouping would contravene [the student's] IEP.").

The SRO did not misapply this standard. Not only is the SRO correct that it is speculative whether the classroom grouping would inhibit R.T.'s annual goals because he had not yet started the program, but evidence in the record supports the conclusion that the APIE program would have benefited R.T.'s progress substantially. The principal of Ulster BOCES, Kramer-Gold, testified that "our assessment of [R.T.] . . . [is that] he would be perfect, he would be an average student. He would fit right in." (Tr. 437:03-07). That Plaintiffs' experts—O'Leary and Fiorile—expressed views to the contrary does not change the speculative nature of this argument or the Court's

conclusion relating thereto. *M.H. v. New York City Dep't of Educ*., No. 10-CV-01042, 2011 WL 609880, at *12 (S.D.N.Y. Feb. 16, 2011) ("Without more, the difference of opinion expressed by the private expert is not sufficient to overcome the deference properly accorded to the SRO's careful analysis of the record.").[13] The SRO's determination with respect to classroom composition is, accordingly, affirmed.

> b.  <u>Peer Reviewed Research</u>

Plaintiffs next argue that "[t]he District ignored its burden under [§ 4404] and did not present a *prima facie* case that it had explored and exhausted the possibility of using research-based interventions for R.T." (Pl. Br. at 18-19). The SRO stated, however, that

> the parents have failed to assert with any particularity what aspect of the APIE program they are challenging within the realm of peer-reviewed research. Moreover, the requirement that the recommended special education program or services be based on peer-reviewed research generally arises in the context of methodology disputes, in which the district is given deference. To the extent that the IHO failed to rule on this claim, I find that any lack of evidence that the recommended APIE program was based on peer-reviewed research does not rise to the level of a denial of a FAPE.

The Court agrees. An IEP need not specifically identify educational methodology to satisfy IDEA. *See K.L. ex rel. M.L. v. New York City Dep't of Educ.*, 530 F. App'x 81, 86 (2d Cir. 2013) ("The parents further argue that the IEP was substantively deficient because it did not mention evaluative methods or a particular teaching methodology. We disagree."). Moreover, Schwartz testified specifically that the APIE program was developed "through a thorough understanding and use of

---

[13] Plaintiffs also argue with respect to this issue that the SRO misapplied N.Y. Educ. Law § 4404's burden of proof standard because the District did not challenge Plaintiffs' grouping evidence in the proceedings below. Given the Court's conclusion herein that such grouping evidence is speculative, the SRO's ultimate determination stands, *i.e.*, that the APIE program provided R.T. with a FAPE.

peer-reviewed research." (Tr. 602-03). The SRO's determination with respect to peer-reviewed research is, accordingly, affirmed.

### c.  Behavioral and Executive Functioning Needs

Plaintiffs' final argument is that the SRO erred by failing to "connect[] the dots between R.T.'s unusually extensive executive functioning problems, the concrete recommendations that had been made for him by clinicians who evaluated him, and the APIE program's programming." (Pl. Br. at 20). The SRO, however, dedicated four pages of its opinion to this issue and carefully weighed the testimony of R.T.'s teachers, the District's experts, and Plaintiffs' experts. (SRO at 33-36). As discussed *supra*, in this type of determination, which involves the "substantive adequacy of an IEP" and is essentially "a dispute over an appropriate educational methodology," the SRO's decision is entitled to particular deference. *K.C.*, 2019 WL 6907533, at *7. To the extent the District's experts' testimony contradicted that of Plaintiffs' experts, the Court defers to the SRO's careful consideration and weighing of each and declines to overturn the conclusions reached. *See M.H.*, 2011 WL 609880, at *12. Kramer-Gold testified that the APIE program would support R.T.'s executive functioning needs and the SRO credited that testimony. Plaintiffs have not met their burden of persuading this Court to the contrary. The SRO's determination with respect to R.T.'s executive functioning and behavioral needs is, accordingly, affirmed.[14]

### CONCLUSION

In light of the foregoing, Plaintiffs' motion for summary judgment is GRANTED IN PART. This case is remanded to the IHO for additional fact-finding and determination of an applicable remedy with respect to the denial of a FAPE for March 2018 through June 2019,

---

[14] Given the Court's conclusion herein that R.T. was not denied a FAPE for 2019-2020, "it is unnecessary for the Court to review the suitability of the [private] placement" or the disposition of equities as to tuition reimbursement. *W.G. v. New York City Dep't of Educ.*, 801 F. Supp. 142, 175 (S.D.N.Y. 2011); *see also infra*, note 7.

consistent with this Memorandum Opinion and Order.[15] The balance of Plaintiff's motion for summary judgment is denied and the SRO's findings, except to the extent indicated otherwise, are affirmed.

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 11; and (ii) close this case.

**SO ORDERED**:

Dated: White Plains, New York
       November 9, 2022

_____
Philip M. Halpern
United States District Judge

---

[15] Given the Court's disposition herein that remand is necessary, any application for legal fees would be, at this stage, premature. *See M.A. v. Torrington Bd. of Educ.*, 980 F. Supp. 2d 279, 288–89 (D. Conn. 2014) ("it makes the most sense to deal with fees at the end of the case after you know what the final result is and see what's at stake." (internal citation omitted)). IDEA provides that attorneys' fees may be awarded to parents of a child with a disability if they are the "prevailing party" in the litigation. 20 U.S.C. § 1415(i)(3)(B)(i). "A parent who receives [an award of compensatory education] pursuant to an administrative proceeding, such as a hearing in front of an [IHO] or SRO, is considered a prevailing party under the IDEA and is entitled to reasonable attorneys' fees and litigation costs." *Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411, 415 (2d Cir. 2010). As such, to the extent Plaintiffs' motion seeks attorneys' fees and costs, that application is denied without prejudice.